UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SEAN H. BENNETT,

       Plaintiff,

Case No. 5:04-CV-60

v.

Hon. Richard Alan Enslen

KALAMAZOO COUNTY
MENTAL HEALTH, *et al.*,

**OPINION**

       Defendants.
_____/

This matter is before the Court on Defendants Kalamazoo County Mental Health Services Agency, Robert Butkiewicz, Carol Riddle-Wallus, Joe Neal and Jan Duplissie's Second Motion for Dismissal and Summary Judgment. Plaintiff Sean H. Bennett has opposed the Motion. Upon review of the briefing, the Court will dispense with oral argument. *See* W.D. Mich. L.Civ.R. 7.2(d).

These Defendants are some of many whom Plaintiff has sued. The Court previously granted summary judgment to Kalamazoo County, its prosecuting attorney and several law enforcement officers. Plaintiff has also sued two physicians–Dr. Jaime Ayala, M.D. and Mukesh Sanghadia, M.D. and the receiving hospital–Borgess Medical Center. The claims against the doctors and hospital, both federal and state, are not part of this Motion and will remain regardless of the resolution.

**BACKGROUND**

Defendants' Motion is their second request for summary judgment. Their first Motion for Summary Judgment was denied without prejudice by Order of May 16, 2005, because the Motion relied upon hearsay statements and documents which were not properly considered under Federal

Rule of Civil Procedure 56(e). Unlike the earlier Motion, Defendants' Second Motion includes the Affidavit of Robert Butkiewicz, which explains his conduct and the conduct of the other moving Defendants; the Motion is otherwise compliant with Rule 56(e). The Second Motion also includes proper reference to certified probate court records and medical records whose admission are supported by the Affidavit of the records custodian–Karyn Tinkler.

As explained in previous orders, this lawsuit arises out of Plaintiff's involuntary civil commitment which began after Plaintiff was arrested for misdemeanor stalking as well as breaking and entering of the residence of a female acquaintance. Upon his arrest, Plaintiff made statements to the effect that the arrest was the product of a vague, wide-ranging conspiracy against him and a church friend. Those statements then prompted mental health staff at the jail to review his mental health status.

Upon such review, a petition for hospitalization was prepared by Robert Butkiewicz (an employee of Kalamazoo County Mental Health and also a deputized peace officer) on March 21, 2002. The petition was filed with Borgess Medical Center (the hospital to which Plaintiff was transferred) on March 21, 2002 and was later filed with the Kalamazoo County Probate Count on March 22, 2002. The petition authorized a 24-hour hold on Plaintiff pending his examination by a psychologist or physician and a confirming diagnosis of a psychiatrist in accordance with Mich. Comp. Laws §§ 330.1427, 330.1428, 330.1429 and 330.1430. The physicians who then examined Plaintiff certified pursuant to §§ 330.1429 and 330.1430 that he was a "person requiring treatment" within the meaning of Mich. Comp. Laws § 330.1401 and, therefore, authorized his continued involuntary treatment pursuant to Mich. Comp. Laws §§ 330.1429 and 330.1430. (*See* Defs.' Ex. 2, certificates of Jamie Ayala, M.D. and Murkesh Sanghadia, M.D.)

Plaintiff challenged his commitment and was held for treatment (approximately six weeks) due to the medical certifications until a jury of the Kalamazoo County Probate Court determined that the proofs did not support his involuntary commitment by clear and convincing evidence under Mich. Comp. Laws § 330.1465. (*See* Defs.' Ex 3, May 2, 2002 discharge order.)  He was then released from custody.

Defendant Butkiewicz is the mental health worker who completed the petition based upon his interview of Plaintiff, Plaintiff's father, the victim and reports from law enforcement.  Defendant Carol Riddle-Wallus was allegedly the supervisor for Defendant Butkiewicz and allegedly failed to take remedial actions regarding Plaintiff's requests that he be immediately released in March 2002. (Compl. ¶ 11.)  Joe Neal, according to the allegations, was also a social worker employed by the Kalamazoo County Mental Health Services Agency who failed to take remedial actions to immediately release Plaintiff.  (*Id.* ¶ 12.)   According to the allegations, Jan Duplissie was the supervisor of Joe Neal and failed to take immediate action to release Plaintiff.  (*Id.* ¶ 13.)  Each of these Defendants allegedly "conspired" to violate Plaintiff's constitutional rights, though the Complaint fails to make specific factual allegations describing such a "conspiracy" aside from the bare allegation, nor does the Complaint describe any conduct by these Defendants other than Butkiewicz' completion of the petition and the others' failure to heed Plaintiff's instructions.

### **STANDARDS FOR SUMMARY JUDGMENT**

Defendants' Motion requests both summary judgment and dismissal.  However, since the Motion raises matters outside the pleadings which will not be excluded by the Court, pursuant to Federal Rule of Civil 12(b) the dismissal motion will be treated as a Rule 56 motion for summary judgment.

Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**LEGAL ANALYSIS**

**1. Federal Claims**

Plaintiff's civil rights complaint alleges that Defendants violated his constitutional rights to procedural and substantive due process of law under the Fourteenth Amendment, against seizure without probable cause under the Fourth Amendment, to remain silent under the Fifth Amendment,

and against cruel and unusual punishment under the Eighth Amendment.[1]  Plaintiff also alleges violations of state law–false imprisonment, malicious prosecution, and assault and battery.

### A. Procedural Due Process

This set of Defendants–unlike Defendants Borgess Medical Center, Jaime Ayala, M.D., and Murkesh Sanghadia, M.D. (the hospital and certifying doctors)–caused at most a very short-term deprivation of Plaintiff's liberty rights.  Defendant Butkiewicz's petition was only effective in resulting in the protective custody of Plaintiff for the first 24-hour period preceding his examination by the doctors and their certifications.  It was their certifications which, as a matter of law, caused Plaintiff's confinement pending his release by the Probate Court.  As such, those certifications constitute a superceding cause for confinement after the 24-hour period.  *See Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982); *Ames v. United States*, 600 F.2d 183, 185 (8th Cir. 1979).  This means that the mental health workers' liability must be assessed in terms of whether this short-term confinement constituted a violation of Plaintiff's constitutional rights.

It is clear that long-term civil confinement is a significant deprivation of liberty requiring due process protection.  *See Addington v. Texas*, 441 U.S. 418, 425 (1979); *Humphrey v. Cady*, 405 U.S. 504, 509 (1972); *DeShaney v. Winnebago County Dep't of Soc. Serv.,* 489 U.S. 189, 200  (1989).  Short-term and emergency civil confinements, on the other hand, by their nature do not permit prior hearing.  *Jensen v. Lane County*, 312 F.3d 1145, 1147 (9th Cir. 2002).  Thus, the question of due process rises and falls with the independent Fourth Amendment inquiry of whether the seizing

---

[1] To the extent that Plaintiff intended to plead a claim for retaliation for the exercise of First Amendment rights, the record does not support such a claim because there is no evidence of a causal nexus between any protected conduct and an adverse action by Defendants.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

officer had "probable cause" to believe that commitment standards (dangerousness) were met.[2] *See Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997) (establishing "probable cause" standard as to civil commitment seizures); *Fisher v. Harden*, 398 F.3d 837, 842-44 (6th Cir. 2005) (holding that "probable cause" standard had been clearly established by *Monday* and other prior decisions of the Courts of Appeal).

### B.  Substantive Due Process

The substantive component of the Due Process Clause protects individuals against "certain arbitrary government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). The threshold question in such cases is "whether the behavior of the governmental officer is so egregious . . . that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998). While the Court is skeptical of whether the general notion of substantive due process should apply in this context, *see Graham v. Connor,* 490 U.S. 386, 395 (1989) (holding that where the Fourth Amendment "provides an explicit textual source of constitutional protection. . . that Amendment, not the more generalized notion of 'substantive due process,' must be the guide . . . ."), if it does apply, no substantive due process violation has been

---

[2]To the extent that Plaintiff is arguing that a medical professional/law enforcement officer–Defendant Butkiewicz–lacks authority to make this probable cause finding, this position is rejected by the holdings of such cases as *Monday*, *supra*, *Washington v. Harper*, 494 U.S. 210 (1990) (holding that involuntary treatment decisions made by medical staff, as opposed to a judge, is consistent with procedural due process), and *County of Riverside v. McLaughlin,* 500 U.S. 44, 54-56 (1991) (holding that requirement of a prompt judicial hearing as to probable cause to arrest did not require a judicial hearing within the first 48 hours of detention).

shown. As explained *infra*, the making of a protective decision by Defendant Butkiewicz–which only resulted in a short detention and had some factual support, was not egregious as a matter of law.

### C. Fourth Amendment

As explained above, the focus of Plaintiff's civil rights claims for a wrongful seizure in the context of the civil confinement depends upon whether the officer–Defendant Butkiewicz–had "probable cause" to believe that the commitment standards (dangerousness) were met. *Monday*, 118 F.3d at 1102; *Fisher*, 398 F.3d at 842-44. This is true even if, as it turns out, the person committed was not actually deserving of commitment. *Monday,* 118 F.3d at 1102 (citing *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988)). Courts must evaluate "probable cause" from the perspective of a "reasonable and objective person in the position of the seizing official." *Id.* The position of the seizing official includes an analysis of whether the officer acted under a "reasonable belief" that the person met the standards for involuntary commitment–even if such reasonable belief might later prove inaccurate. *Id.* at 1103.

In the present case, Defendant Butkiewicz knew that Plaintiff was arrested because of criminal complaints about misdemeanor stalking and breaking and entering. (Butkiewicz Aff. ¶¶ 4, 6; Butkiewicz Exs. A, B & C.) Defendant Butkiewicz talked to the female victim to confirm her complaints. (*Id.*) Defendant Butkiewicz interviewed Plaintiff, who admitted the unlawful entry and the making of unwanted phone calls to the victim. (*Id.*) Plaintiff also attributed his arrest to a "conspiracy" between members of the Church of God to blackmail the victim. (*Id.*) Plaintiff admitted that he had a history of mental hospitalization due to paranoid schizophrenia and had made

many phone calls to police to report the supposed conspiracy.[3] (*Id.*) Plaintiff's father also confirmed for Butkiewicz the history of his son's mental health treatment. (*Id.*)

Plaintiff has denied that he posed any danger warranting commitment and has asserted that Defendants were engaged in an illegal conspiracy against him. (Pl's Resp., Dkt. No. 142, at 2-3.) While Plaintiff's argument that he did not pose a grave threat to the victim and others may be assumed to be true, the record supports, without contradiction, Defendant Butkiewicz's position that Plaintiff, because of his mental condition, delusions and past unlawful entry, posed a significant risk of danger to himself of engaging in future dangerous conduct such as unlawful entry of residences (which sometimes results in serious injury to the illegally entering person because of the use of self-defense). This risk was such that it certainly warranted the minimal restraint upon liberty (a short hold) necessary for further evaluation by medical professionals. As such, Defendant Butkiewicz and the other moving Defendants are entitled to summary judgment as to the Fourth Amendment claim.

**D. Fifth Amendment**

Plaintiff has alleged in his Complaint and other papers that Defendants violated his Fifth Amendment rights against incrimination by questioning him without providing him with *Miranda* warnings regarding his civil commitment. This claim is contradicted by the United States Supreme Court case law which limits *Miranda* and other Fifth Amendment protections to the criminal context and does not apply them to civil commitment proceedings. *Allen v. Illinois*, 478 U.S. 364, 370 (1986). As such, summary judgment is properly granted.

---

[3]Those allegations are insufficient as a matter of law to show an illegal agreement or establish section 1983 liability. *See Gutierrez v. Lynch,* 826 F.2d 1534, 1538 (6th Cir. 1987); *Robinson v. Central Brass Mfg. Co.*, 987 F.2d 1235, 1245 (6th Cir. 1993).

**E. Eighth Amendment**

Plaintiff has sued on the ground that the involuntary commitment and associated medical treatment caused by Defendants violated his Eighth Amendment rights against cruel and unusual punishment. This claim is without merit. Plaintiff was not convicted of an offense in connection with the involuntary commitment such that his commitment stay does not implicate the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986); *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 243-44 (1983); *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). This is not to say, however, that state actors may treat persons who are involuntarily committed inhumanely. However, if they do so, the source of the violation (as with the maltreatment of pretrial detainees) is the Due Process Clause and not the Eighth Amendment. *Id.* Notwithstanding Plaintiff's arguments under the wrong amendment, a liberal construction of the record does not shown any constitutional violation under either the Fourteenth or the Eighth Amendment. This record simply does not indicate any inhumane treatment by Defendants during the 24-hour hold period . As such, summary judgment is warranted as to all federal claims against these Defendants.[4]

**2. State Law Claims**

Having resolved the federal claims against these Defendants, the state law claims deserve like treatment. Plaintiff's claims for false arrest and malicious prosecution each depend upon proof that

---

[4]Although the determination that the record does not support section 1983 liability as to any of the federal claims exonerates all of the moving Defendants, it is also true that under *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658 (1978), liability against Kalamazoo County Mental Health Services Agency cannot be premised on *respondeat superior*. While Plaintiff has generally alleged that the Agency caused the constitutional violations by its policies, he has not presented evidence of such, nor any concrete allegations explaining this theory. As such, the Agency is entitled to summary judgment as to all federal claims on this basis as well.

Defendants acted without probable cause is instituting the commitment proceedings and seizure. *See* Mich. Stand. Civ. J.I. 2d §§ 116.05, 117.20 (ICLE 2005). As indicated above, the evidence filed shows as a matter of law that Defendants did have probable cause to believe that Plaintiff was a danger to himself (i.e., he might by hurt by continued stalking and illegal entry because such practices may occasion the use of deadly force in self-defense). As such, summary judgment is also appropriate as to these claims and the claims of assault and battery. The latter are properly dismissed since they are premised only upon the use of lawful force to commit Plaintiff and treat Plaintiff during commitment as opposed to some other kind of excessive force (which the evidence does not show). *See* Mich. Stand. Civ. J.I. 2d § 115.09.

## **CONCLUSION**

For the reasons given, a Partial Judgment shall enter in favor of the moving Defendants and against Plaintiff. This Partial Judgment will resolve all pending claims except for the federal and state law claims against Defendants Ayala, Sanghadia, and Borgess Medical Center.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>March 10, 2006 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |